ALTENBERND, Judge.
The Appellants, the Leña Corporation of St. Pete; Susan J. Agia, individually and as trustee of the Susan J. Agia Living Trust; and Dr. Raymond Agia, appeal a final judgment, which the Appellees, Far-eed Ossi; Ossi Consulting Engineering, Inc.; and Ossi Construction, Inc., also appeal. The trial court entered a final judgment on numerous claims and counterclaims. It denied relief to all parties seeking affirmative relief on a theory that all claims were barred by the doctrine of unclean hands. We conclude that the trial court erred in deciding that the claims were all barred by this doctrine. We doubt that any of the claims are barred by this doctrine. Accordingly, we reverse the judgment on appeal and remand for further proceedings.
I. THE CONDOMINIUM DEVELOPMENT AND RESULTING LAWSUIT
The facts in this case are quite complex. The explanation of the facts in this opinion is intended to explain our holding; it may exclude details that would be important to the trial court in ultimately deciding the various claims on remand.
In 1976, Dr. Agia purchased undeveloped land in St. Pete Beach, Florida. In 1993, he transferred this land to an irrevocable trust, the beneficiaries of which were his two daughters. His wife Susan Agia was the trustee of this irrevocable trust. Despite this transfer, it appears that Dr. Agia may have maintained practical, if not legal, control over this property and over the decisions to develop the property.
Fareed Ossi worked with Dr. Agia beginning in the 1990s to develop this property. This working relationship was . not adequately documented by written employment contracts or partnership agreements. Mr. Ossi prepared plans for a condominium development known as the Cabrillo Condominiums. Some of this work was performed by his corporation, Ossi Consulting Engineers, Inc.
In 2005, the Leila Corporation was formed to be the owner and developer of this property. The corporation purchased the land from the irrevocable trust for $5,850,000. Some of the money to purchase the land was borrowed from a bank by the Leila Corporation. The corporation apparently also gave a promissory note in the amount of $2,850,000 to the irrevocable trust to purchase the land. This loan was guaranteed by Mr. Ossi.
Dr. Agia had no ownership interest in the Leila Corporation. As a legal matter, it would appear that he had had no ownership of any part of this development after he transferred the land to the irrevocable trust in 1993. The Leila Corporation, as a stock corporation, was seventy-five percent owned by Susan Agia and twenty-five percent owned by Mr. Ossi. The two shareholders entered into a written shareholders’ agreement. Mr. Ossi was president of the corporation and contributed an initial $125,000 to its capital. Susan Agia contributed $375,000 to its capital. Thus, their initial capital contributions aligned *472 with their equity ownership in the corporation.
The Leila Corporation entered into a construction contract with Ossi Construction, Inc., which was owned by Robert Ossi, the son of Fareed Ossi, to construct the condominiums. That work was performed primarily in 2005 and 2006.
During the construction of the condominium, there allegedly was a need for additional capital contributions. Mr. Ossi did not or could not make his contributions, and Mrs. Agia advanced money in addition to her own contributions to cover the shortfall. When the units were ready to be sold, allegedly Dr. Agia and his wife purchased one of the units for fair market value and the other units were available for sale to the public. The timing of the completion of this condominium development unfortunately coalesced with a downturn in the real estate market. The result was a long list of disputes between and among these parties. Because Dr. Agia and Fareed Ossi seemingly had strong influence over their respective families, the litigation took on the appearance of a family feud between the Agías and the Ossis.
Without attempting to describe every claim in the lawsuit, Fareed Ossi sued to dissolve the corporation and obtain an accounting. He also sought damages of more than $500,000 from Dr. Agia and his wife. Ossi Consulting Engineers sought $322,050 from Dr. Agia for services allegedly rendered on an oral contract to provide construction administration services. Susan Agia sought damages against Far-eed Ossi for the capital contributions that she made on his behalf. The Leila Corporation sought damages from Fareed Ossi both in his capacity as an officer of the corporation and for alleged professional negligence. The Leila Corporation also sought damages from Ossi Consulting Engineers for breach of the oral contract for construction administration and for professional negligence. Finally, Ossi Construction sued the Leila Corporation for the unpaid balance of the construction contract, and the Leila Corporation counterclaimed for damages arising from construction defects. By our count there were seven different legal parties seeking relief for, against, or among one another. Although the interests of each party seem distinct to this court and this dispute probably could have been severed into several separate lawsuits, it was tried with one law firm representing the parties associated with the Agia family and another law firm representing the parties associated with the Ossi family.
At the end of the nonjury trial, the trial court entered a final judgment denying relief to every party seeking relief based on a determination that all claims were barred by the doctrine of unclean hands arising from actions taken by Dr. Agia in connection with an automobile accident.
II. THE AUTOMOBILE ACCIDENT
In 2004, Dr. Agia was in an automobile accident. He apparently was at fault in the accident and someone died. He was concerned that his insurance coverage was inadequate and that he might have personal liability for the accident. He was sued as a result of the accident, but our record contains no information about the outcome of that case. Because of his concern, Dr. Agia was hesitant to have assets in his name alone that could be used to satisfy a judgment. Apparently, the decision to have the stock in the Leila Corporation owned by Susan Agia was influenced by Dr. Agia’s concerns.
At the time the corporation was created, Dr. Agia had not been sued for the accident. It was only a possibility that a judgment might eventually be entered against him. No asset owned by Dr. Agia that could have been used to satisfy any *473 future judgment was placed into the corporation. We do not know whether Dr. Agia owned the car involved in the accident, but if he owned it jointly with his wife, the stock of the Leila Corporation actually created an easy asset against which to collect a judgment.
Even if the corporate structure was created to permit Susan Agia to use funds in a jointly owned bank account to fund the construction of the condominiums, that plan would not appear to defraud creditors or to be unlawful in any manner.
III. THE DOCTRINE OF UNCLEAN HANDS CANNOT BAR ALL CLAIMS
We note that the doctrine of unclean hands was not raised as a defense to all claims, although it was raised in a generic fashion as a defense to a portion of the claims. The trial court seems to have gravitated toward this defense for all claims due to the amalgamated fashion in which the case was tried.
As explained in the preceding section, the steps taken by Dr. Agia do not seem to fall within any recognized concept of unclean hands. “It is a fundamental principle of equity that no one shall be permitted to profit from his own fraud or wrongdoing, and that one who seeks the aid of equity must do so with clean hands.” Yost v. Rieve Enters., Inc., 461 So.2d 178, 184 (Fla. 1st DCA 1984). “Unclean hands may be asserted by a defendant who claims that the plaintiff acted toward a third party with unclean hands with respect to the matter in litigation.” Quality Roof Servs., Inc. v. Intervest Nat’l Bank, 21 So.3d 883, 885 (Fla. 4th DCA 2009).
The pleadings contain no allegations, by any of the parties, that this corporate structure was in any way used with the intent of defrauding creditors. Nonetheless, the trial court determined that the parties participated in a plot to hide Dr. Agía s assets from a potential judgment creditor. The court deemed the plan “conceived in fraud” and dismissed all claims on the authority of Whitelock v. Geiger, 368 So.2d 372 (Fla. 3d DCA 1979). In Whitelock, contracting parties admitted to devising, participating in, or carrying out a fraudulent scheme intended to defraud creditors. Id. at 374. Here, despite the lack of similar evidence or party allegations of fraud, the court sua sponte found applicable the doctrine of unclean hands and determined that the parties “should be left to settle their dispute without the aid of the court.” The competent, substantial evidence presented at the nonjury trial does not support the findings necessary for this legal conclusion.
From a legal perspective, Dr. Agia actually has a very limited role in this lawsuit. He may be serving as an agent of one or more of the other parties, but he has no ownership interest in the development. The occurrence of the automobile accident, for example, should have no relevance to the claims between the Leila Corporation and Ossi Construction.
On remand, we leave it to the discretion of the trial court as to whether it can resolve these various claims on the current record or whether it needs any additional proceedings. Although the claims were tried in this collective fashion, given that none of the legal theories seem to involve all of the parties, it might be helpful for the trial court to create separate final judgments to resolve claims only between or among the parties affected by the particular claims.
Reversed and remanded.
DAVIS, C.J., and WALLACE, J., Concur.